IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

JENNIFER A. D.,

                    Plaintiff,

          v.                                    Civil Action No.
                                                5:20-CV-1254 (DEP)


COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

─────────────────────────────────

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

AMDURSKY, PELKY LAW FIRM        AMY CHADWICK, ESQ.
26 East Oneida Street
Oswego, NY 13126

FOR DEFENDANT

SOCIAL SECURITY ADMIN.          LOUIS JOHN GEORGE, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


DECISION AND ORDER[1]

───────────────

[1]      This matter is before me based upon consent of the parties, pursuant to 28
U.S.C. § 636(c).

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") and supplemental security income ("SSI") benefits for which she has applied.  For the reasons set forth below, I conclude that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in April of 1987, and is currently thirty-four years of age.  She was twenty-nine years old on her alleged onset date and thirty years old at the time of her application for benefits in February 2018. Plaintiff stands five feet and six inches in height, and weighed between approximately one hundred and twenty-four and one hundred and seventy pounds during the relevant time period.  Plaintiff lives in an apartment in Oswego, New York with her boyfriend.

In terms of education, plaintiff is a high school graduate and has two associates degrees, one in liberal arts and sciences with a concentration in criminal justice, and the other in business administration.  She has held multiple jobs in the past, but lost most of them due to symptoms related to

2

her premenstrual dysphoric disorder ("PMDD").

Mentally, plaintiff alleges that she suffers from borderline personality disorder, bipolar disorder causing both manic and depressive periods, and anxiety.  She has received mental health treatment consisting primarily of medication and therapy.  Plaintiff has been hospitalized for psychiatric issues on multiple occasions throughout the period documented by the record, including once in 2014, once in 2018, and twice in 2019, all of which were related to either suicidal thoughts or suicide attempts.  During the relevant period, plaintiff treated for her mental health conditions with Dr. Narayana Reddy and Licensed Clinical Social Worker ("LCSW") Joan Myers at St. Joseph's Hospital Health Center, as well as with sources at Oswego Hospital and Upstate University Hospital for her inpatient care.

Plaintiff also claims to suffer from a host of physical impairments, including headaches, back pain, ankle/foot pain related to fractures and injuries, gastrointestinal issues, and urinary issues.  She has been treated for these impairments throughout the relevant time period with medications, physical therapy, injections, and, as to her gastrointestinal and urinary impairments, surgical intervention.

Plaintiff has reported that she has been suffering from mental health impairments since she was a teenager.  She has had inpatient hospital

admissions related to her impairments and is currently in a high-risk program for mental health treatment.  Her borderline personality disorder causes her to act differently around different people, her bipolar disorder results in manic and depressive episodes, and her anxiety causes panic attacks once a week or every two weeks.  She also used to suffer from PMDD, although that condition improved greatly after her ovaries were surgically removed. Plaintiff reports that she does not drive because of anxiety, and that she never even tried to obtain her license as a result of that condition.  Between all of the treatment for her multiple impairments, plaintiff has an average of three or four doctor's appointments every week. She reports that she wants to be able to work, but has difficulty dealing with people unless she is comfortable and difficulty dealing with stress or harassment.

II.     PROCEDURAL HISTORY

  A. Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Title II and Title XVI of the Social Security Act, on February 13, 2018, and February 14, 2018, respectively.  In support of those applications, she alleged a disability onset date of November 3, 2016,[2] and claimed to be disabled based on bipolar

---

[2] Plaintiff was insured for benefits under Title II until September 30, 2021.

disorder, borderline personality disorder, attention deficit hyperactivity disorder ("ADHD"), PMDD, obsessive compulsive disorder ("OCD"), manic depression, somatoform disorder, irritable bowel syndrome, and chronic migraines.

A hearing was conducted on November 6, 2019, by ALJ Michael J. Kopicki, to address plaintiff's applications for benefits.  ALJ Kopicki issued an unfavorable decision on December 24, 2019.  That opinion became a final determination of the agency on September 14, 2020, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

B.    The ALJ's Decision

In his decision, ALJ Kopicki applied the familiar, five-step sequential test for determining disability.  At step one, he found that plaintiff had not engaged in substantial gainful activity during the relevant period. Proceeding to step two, ALJ Kopicki found that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including lumbar degenerative disc disease, status-post ankle fractures, migraines, asthma, bipolar disorder, borderline personality disorder, anxiety disorder, obsessive compulsive disorder, and somatoform disorder.  As part of his step two finding, ALJ Kopicki also

concluded that plaintiff's additional medically determinable impairments of sleep apnea, digestive/abdominal issues, history of ovarian issues with surgical removal and hysterectomy, PMDD, hypothyroidism, and edema are all not severe.

At step three, ALJ Kopicki examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listings 1.02, 1.04, 3.03, 11.02, 12.04, 12.06, and 12.08.

ALJ Kopicki next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a full range of light work, with the following limitations:

> claimant can lift and/or carry 10 pounds frequently and 20 pounds occasionally. She can stand and/or walk for six hours in an eight-hour workday with normal breaks and sit for six hours in an eight-hour workday with normal breaks. She can frequently climb, stoop, crouch, crawl, kneel, and balance. The claimant is capable of understanding, remembering, and carrying out simple instructions and can implement routine and repetitive tasks. She should have no more than occasional contact with the public as part of her job duties. She can have occasional interaction with supervisors. She can have occasional interaction with co-workers, and should not perform tandem tasks with co-workers.

At step four, ALJ Kopicki concluded that plaintiff is unable to perform any of her past relevant work.  Proceeding to step five, the ALJ elicited testimony from a vocational expert, and relied on that vocational expert's testimony to find that plaintiff remains capable of performing other work in the national economy as an inspector/hand packager, final assembler, business machine assembler, and poultry machine tender.  Based upon these findings, ALJ Kopicki found that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on October 9, 2020.[3]  In support of her challenge to the ALJ's determination, plaintiff raises several arguments, contending that (1) the ALJ erred in not finding that plaintiff meets or equals any of the relevant Listings related to her mental impairments, and in particular that the ALJ failed to consider evidence of greater limitations and failed to find that she had at least marked restrictions in the areas of adapting and managing, interacting with others, and concentration, persistence and pace; (2) the ALJ erred by rejecting the opinion from

---

[3]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

consultative examiner Dr. Jeanne Shapiro and instead relying on the opinion from non-examining state agency physician Dr. L. Haus; (3) the ALJ failed to adequately consider her somatoform disorder when assessing her subjective reports regarding the intensity, persistence, and limiting effects of her symptoms in that he inappropriately used evidence related to that disorder against her without documenting that he actually considered the interplay between that disorder and her symptoms, and further that he inappropriately used a lack of objective abnormalities to support his finding; and (4) the RFC finding is not supported by substantial evidence in that (i) the ALJ failed to include a limitation regarding her documented need to have excessive absences to attend medical appointments, (ii) the RFC finding does not reflect certain limitations opined by Dr. Shapiro that the ALJ found to be supported, and (iii) the ALJ failed to appropriately assess her somatoform disorder.  Dkt. No. 13.

Oral argument was conducted in this matter, by telephone, on March 15, 2022, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is

limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must

be "more than a mere scintilla" of evidence scattered throughout the

administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation

marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal

whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining evidence from both

sides, because an analysis on the substantiality of the evidence must also

include that which detracts from its weight."  *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951);

*Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or

whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

If it is determined that it does, then as a final matter, the agency must

examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g),

416.920(g).

The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it

becomes incumbent on the agency to prove that the claimant is capable of

performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC,

age, education, past work experience, and transferability of skills.  *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    <u>Analysis</u>

1.    <u>The ALJ's Assessment of Plaintiff's Statements
      Regarding the Intensity, Persistence and Limiting Effects
      of Her Symptoms</u>

Plaintiff argues that the ALJ erred in assessing her statements

regarding the intensity, persistence and limiting effects of her symptoms by

failing to adequately consider the effects of her somatoform disorder when

conducting that assessment.  Dkt. No. 13, at 22-24.

Under the two-step review protocol applicable in social security cases

for assessing a claimant's subjective reports of symptoms, an ALJ must first determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, and, if so, then the ALJ must then evaluate the intensity and persistence of those symptoms and determine the extent to which those symptoms limit the claimant's ability to perform work-related activities. Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3-8.  When addressing this second prong, an ALJ must consider the objective medical evidence and other evidence in the record, including statements by the claimant and reports from both medical and non-medical sources, and must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms, considering relevant factors which include evidence regarding (1) daily activities, (2) the location, duration, frequency, and intensity of pain or other symptoms, (3) factors that precipitate or aggravate the claimant's symptoms, (4) the type, dosage, effectiveness, and side effects of medication, (5) any treatment other than medication that is used to relieve the symptoms, (6) other measures to obtain relief of symptoms, and (7) any other relevant factors.  *Id.*

     If the ALJ finds that a claimant's subjective testimony should be rejected, he or she must explicitly state the basis for doing so with sufficient

particularity to enable a reviewing court to determine whether those reasons for disbelief are legitimate and whether the determination is supported by substantial evidence. *Martone v. Apfel*, 70 F. Supp. 2d 154, 151 (N.D.N.Y. 1999) (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  The ALJ's decision need not contain a discussion of all of the potentially relevant factors listed above, provided that it is clear from the decision that the ALJ considered all of the evidence and that he or she provided specific reasons for his or her determination as to the intensity, persistence, and limiting effect of the claimant's symptoms. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that failure to discuss certain factors did not require remand because the ALJ provided specific reasons for his determination "and the record evidence permits us to glean the rationale of the ALJ's decision").  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review. *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

In assessing plaintiff's subjective reports regarding her symptoms, the ALJ found that those statements were "not entirely consistent with the medical evidence and other evidence in the record."  AT 17.  In explaining this finding, the ALJ stated that plaintiff's reports were not fully supported

14

by the objective record, noting that, although plaintiff "reported many somatic complaints in 2015" along with extreme pain, objective imaging, tests, and physical examinations were generally quite normal.  AT 17-19. The ALJ also pointed to the fact that injections and physical therapy significantly reduced her pain; that the records show "instances of questionable non-compliance"; that she reported "improvement in her mood and stability in her life when she took her medications as prescribed"; that she was able to perform many activities such as skateboarding, walking several miles with a full backpack, applying for and obtaining multiple jobs, working during the relevant period and performing activities of daily living; that she reported wanting to work as a secretary despite her alleged difficulties being around people; and that her providers made multiple notations to the effect that plaintiff was "dramatic" and sought treatment that was likely not medically necessary as calling into question the reliability of her statements regarding her limitations.  AT 20.

It is notable that, although the ALJ found plaintiff's somatoform disorder to be a severe impairment, he did not make any explicit or substantive mention of that impairment in his analysis section other than to state that "[t]he claimant reported many somatic complaints in 2015."  AT 17.  That reference falls short of clearly indicating that the ALJ

15

acknowledged any of plaintiff's somatic complaints for the period after 2015, which is a particularly notable failure given that plaintiff claims a disability onset date in November of 2016.  Although the ALJ cites to instances of physicians reporting that plaintiff was "dramatic," that she was adamant about believing she was very ill, that she might not want to get better because her medical issues were "wrapped up in her identity," that she moved "from one crisis to another," and that she might be "seeking medical treatment and procedures which may not have a medical necessity," he never actually attributes any of these behaviors to plaintiff's somatoform disorder.  In his discussion of the "B criteria" when assessing whether plaintiff's impairments meet or equal a Listing, the ALJ noted that "[d]espite her hospitalizations, the record documents concerns that 'the claimant's getting better would be contrary to what she is wanting.'"  AT 15-16.  In short, the ALJ's failure to mention or discuss plaintiff's somatoform disorder anywhere in the body of his decision beyond listing it as a severe impairment, combined with his heavy reliance on statements by providers that relate to manifestations of her somatoform disorder, leaves the impression that the ALJ – albeit implicitly – improperly used these various statements as evidence that plaintiff is a malingerer or unwilling to help herself rather than considering them in light of her somatoform disorder, a

disorder the ALJ himself recognized as a medically determinable severe impairment.  In short, it is unclear that the ALJ properly assessed plaintiff's reports or behaviors in the context of her somatoform disorder.

This court has previously recognized that, "although a somatoform disorder does not insulate a claimant from an ALJ's credibility finding, it should be considered."  *Tricic v. Astrue*, 07-CV-9997, 2010 WL 3338697, at *8 (N.D.N.Y. Aug. 24, 2010) (Mordue, C.J.).  I am simply not convinced, based on a consideration of the ALJ's decision as a whole, that he adequately considered the effects of plaintiff's somatoform disorder – which, again, he recognized constitutes a severe medically determinable impairment – when determining that many of her subjective reports of symptoms should be rejected.  *See Nelson v. Comm'r of Soc. Sec.*, 14-CV-0983, 2015 WL 3936939, at *5 (N.D.N.Y. June 26, 2015) (Suddaby, J.) (finding that the ALJ's failure to explicitly consider or even mention the plaintiff's somatoform disorder when assessing credibility was error warranting remand).

The Commissioner argues that, even if the ALJ erred in failing to adequately consider plaintiff's somatoform disorder when assessing her subjective reports, the error is harmless because the ALJ provided multiple other reasons to support that finding.  However, there are problems with

the alternative rationale provided by the ALJ that prevent meaningful review.

While the ALJ found that plaintiff's mood and stability improved when she adhered to her medications, that finding cannot constitute a valid reason for rejecting plaintiff's subjective reports as a whole because it again ignores the fact that plaintiff's somatoform disorder represents a severe impairment. Notably, although there are various reports that plaintiff's mood improved with medication and she felt her life was more stable at times, her mental health treatment records – and the voluminous amount of treatment she sought for her physical complaints – clearly show that plaintiff's mental health medications and therapy were not lessening the effects of her somatoform disorder. In September and October of 2016, for example, Therapist Joan Myers noted that, although plaintiff was less anxious and dysregulated than on her last visit, she was still reporting multiple somatic complaints, especially gastrointestinal symptoms. AT 1047. In July of 2017, Therapist Myers noted that plaintiff's main coping skill was somatization. AT 1542. In January 2018, Therapist Myers noted that plaintiff continued to express somatic complaints and to define herself as a "mental patient." AT 1569. Also in January 2018, Dr. Narayana Reddy noted that plaintiff was still very somatically focused. AT 1572. In

September and December 2018, Therapist Myers noted that plaintiff continued to somatize.  AT 2866, 2869.  In April 2019, Dr. Reddy noted that she reported doing well on her current medication regimen, but that she also continued to report multiple medical issues, at least some of which appeared to be somatic.  AT 2856.  In June of 2019, plaintiff was admitted for inpatient hospitalization after a suicide attempt prompted by her frustration that her medical providers were not taking her complaints of physical issues seriously and instead dismissing them as somatic.  AT 2695, 2835.  At plaintiff's assessment with the Upstate High-Risk program in October 2019, Dr. Andy Beltran assessed that her "hyperfocus" on her somatic complaints was at times "delusional," and indicated that he believed it had resulted in her having undergone unnecessary treatment, including multiple unnecessary surgeries related to her bladder and reproductive organs.  AT 2954-2960.  He specifically noted that "[i]n my interview, the one constant was her desire to convince me of her many medical issues and her suffering because of them."  AT 2960.

It is therefore abundantly clear that plaintiff's somatoform disorder was not being addressed or controlled by her adherence to prescribed medications, and the ALJ's reliance on improvement in mood and general life stability with mental health medications ignores the wealth of evidence

related to that disorder and further highlights the fact that he did not

properly assess the effects of plaintiff's somatoform disorder as part of his

analysis.  *See Cathleen B. v. Comm'r of Soc. Sec.*, 20-CV-0939, 2021 WL

4472472, at *9 (W.D.N.Y. Sept. 30, 2021) (finding error in the ALJ's

reliance on improvement in the symptoms of plaintiff's mental impairments

with medication where, although her depression and mood did improve,

there was no evidence that her somatoform disorder, particularly her

"perseverative belief that she had chronic fatigue syndrome and

fibromyalgia" improved with medication).

I note, moreover, that plaintiff continued to experience difficulties

beyond her mood as a result of her mental impairments, with her mental

health providers consistently noting that she lacks insight into how her

behaviors and choices impact her moods.  *See e.g.*, AT 1529, 1539, 1542,

1562, 1572, 2850, 2859, 2869.  In June of 2018, plaintiff was admitted to

the hospital for a suicide attempt prompted by a disagreement with her

boyfriend and, a week later, Therapist Myers observed that she was

drinking on the weekends, continuing to smoke cannabis daily, using her

pain pills too much, and going from "one crisis to the next."  AT 2602, 2872.

In June of 2019, in between two inpatient hospital admissions, plaintiff was

noted to have no insight into her somatization and a desire to change her

medications rather than working to gain insight into her condition. AT 2843. Again, the fact that plaintiff's mood improved does not indicate that her mental impairments were under control. Indeed, the record makes clear that plaintiff continued to lack insight into her behaviors, moods, and the effects of her somatoform disorder even while compliant with her prescribed medications.

As to the ALJ's reliance on "instances of questionable non-compliance," he does not indicate what those instances were specifically and fails to cite to evidence related to such instances. In other parts of his decision, the ALJ does note that plaintiff experienced a panic attack in January 2018 when she was not taking all her medications, did not follow up with mental health treatment as directed after one of her hospitalizations because she wanted her psychiatrist to see how ill she was, and continued to smoke cannabis despite recommendations to stop. AT 19-20. However, with the exception of the failure to take her medications as directed in January 2018,[4] the other two instances noted by the ALJ both directly relate to her somatoform disorder. Her failure to follow up with treatment after her hospitalization to show Dr. Reddy how "ill" she is – and indeed her

---

[4]      I note that Therapist Myers documented that plaintiff reported she "was out" of the relevant medication for a week during this time in question. AT 1572. There is no indication that plaintiff was refusing to take her prescribed medications.

hospitalizations themselves – were a result of her feeling like Dr. Reddy and Therapist Myers were not taking her complaints seriously and dismissing them merely as "somatic."  AT 2835, 2843.  Additionally, plaintiff reported on multiple occasions that she did not want to stop using cannabis because she believed it helped her with her seizures, pain and gastrointestinal issues, all of which impairments her physicians have attributed at least in part to her somatoform disorder.  *See e.g.*, AT 782, 1011, 1024, 1037, 1047, 1058.  Because the ALJ appears to have failed to consider the context of the cited incidents of non-compliance, and particularly the extent to which plaintiff's somatoform disorder caused or contributed to them, those instances do not provide a valid reason to support the ALJ's overall finding, a fact that further highlights the ALJ's failure to appropriately and adequately assess the particular effects of plaintiff's somatoform disorder.  *See Clemons v. Comm'r of Soc. Sec.*, 16-CV-0658, 2017 WL 766901, at *7 (N.D.N.Y. Feb. 27, 2017) (Baxter, M.J.) (finding error in the ALJ's failure to evaluate the reasons for the plaintiff's non-compliance when using that non-compliance to reject her subjective reports); Social Security Ruling ("SSR") 16-3p (stating that "[w]e will not find an individual's symptoms inconsistent with the evidence on the basis of [non-compliance with treatment] without considering possible reasons he or

22

she may not comply with treatment").

As to the ALJ's citation to portions of the plaintiff's hearing testimony in which she stated that she "would like to perform work as a secretary despite her alleged difficulties being around people," I find that the ALJ selectively focused on those portions of plaintiff's testimony without considering them in context.  The exchange at the hearing regarding this issue was as follows:

> A:     Well, right now I would love to have a secretary position somewhere. Somewhere I'd be able to sit down and use my degree. But I have a problem standing, and I have problem[s] in a lot of places in Oswego due to my anxiety and seeing people, and it's very, very hard.
>
> Q:     Okay, so, and so you think you could do a sit-down job fill-time?
>
> A:     Not full-time. I don't think I could do it full-time.
>
> Q:     Now, no honestly, I think you have enough physically, because you would have to be less than sedentary, 'cause you're a younger person. Your case is really gonna probably hinge on the mental. Mentally, do you think you could hold down a simple job being away from people on a full-time basis?
>
> A:     What I really want to do is get an at-home job. You know what I mean? But like yeah, I would want to be a secretary and be able to sit at a desk and do, you know, those things.
>
> Q:     But secretary, you interact with people. Do you think you could do a simple, routine, sedentary job

that keeps you away from people?

A:   Yeah, I – and I'm okay with some people. Like it depends on how comfortable I am. That's, that's how it, like that's part of the borderline. Where it depends on how comfortable I feel. Because also at every job I've had, I've had multiple breakdowns all through the jobs.

Q:   Okay, what would cause the breakdowns? [You] mentioned, was it the [PMDD]? But you had a surgery for that. And you say that, that's –

A:   I – this was all, well, this was before that. At McDonald's I got – I would cry a lot due to too much going on at once, it being too busy. The college it was because I was being harassed by a woman for a year, and I went up from people to people to people to try to help, they did not help, so I had a mental breakdown. And they actually illegally fired me because I had two psychiatric notes before that.  And I could have sued them for that also. So after I got the PMDD in McDonald's I threw an ice bucket and a chair. And then, also in Burger King I screamed at a girl and just was so angry and that was the PMDD too. And, and the last one, the Walmart one, I couldn't handle people putting me in a panic attack like that. And I was getting panic attacks every single weekend being there, on the job.

Q:   Okay, these are all jobs that put you around a lot of people though. You know. All right, well, you know, we gotta move on.

AT 66-68.  As is clear from this excerpt, when her testimony is considered

in full, although plaintiff did state that she would want to work as a

secretary, she also testified that she did not think she could do so on a full-

24

time basis and that her ability to work in such a position at all would be dependent on whether she felt comfortable with any people she had to work with or around. The fact that plaintiff aspires to be a secretary in the abstract does not translate into an ability to actually perform that job, and the testimony as a whole does not show that this statement constitutes evidence supporting the ALJ's conclusion.

As to the ALJ's reliance on statements that plaintiff was "dramatic," or seeking care that was not medically necessary, I find that, although the ALJ's finding regarding those statements' raising questions about the reliability of plaintiff's other statements is certainly facially logical, I cannot conclude that it constitutes substantial evidence to support his overall finding in the absence of any indication he appropriately assessed the nature and impact of plaintiff's somatoform disorder. To accept the ALJ's reasoning here without any indication that he properly considered the nature and effect of her somatoform disorder would be essentially to approve a finding that individuals with somatoform disorders are by their very nature unreliable, placing them at an unfair disadvantage when trying to prove disability as a direct consequence of one of the medical impairments that is contributing to their alleged disability. Such a result would be inconsistent with the Agency's own regulations related to

25

somatoform disorders, which recognize both that (1) the somatic symptoms are not within the control of the individual and not feigned, and (2) the disorder can result in an individual earnestly believing they have a condition to the point they manifest symptoms of that condition.  *See* 20 C.F.R. § 404, Subpart P, App. 1, 12.00(B)(6).  Without a prior assessment by the ALJ reflecting he appropriately considered plaintiff's somatoform disorder and the extent to which that disorder was responsible for the behaviors he found rendered her unreliable, these statements cannot serve as substantial evidence to support his assessment.

The ALJ also found that plaintiff's subjective reports of pain and limitation were not fully supported because the record shows that she reported improvement in her pain with injections and physical therapy and "[m]any of her physical examinations have been normal, and her physical consultative examination was almost entirely benign."  AT 20.  Although the ALJ is correct that plaintiff certainly expressed experiencing fairly significant relief in her pain from injections in particular, I am not convinced that the ALJ adequately accounted for the range of abnormal findings noted in the physical treatment records particularly related to plaintiff's back and ankle impairments.  Notably, despite the fact that the ALJ discussed sporadic treatment notes recording observations of plaintiff having mild or no

abnormal findings, this summary completely ignores a large volume of other examination notes reflecting that plaintiff was observed to variously have sacroiliac joint tenderness, tender trigger points, and painful range of motion even while receiving injections and other treatment.  *See e.g.*, AT 1278, 1294, 1302, 1309, 1315, 2291, 2297, 2311, 2320, 2325, 2337, 2341, 2349, 2354, 2361, 2391.  Although it is well-recognized that an ALJ is not required to discuss every piece of evidence to show that it was considered, the ALJ's explicit finding that plaintiff's examinations were generally normal makes it unclear whether he ignored evidence of greater continuing physical symptoms despite treatment.  *See Hopkins v. Comm'r of Soc. Sec.*, 13-CV-1082, 2015 WL 4508630, at *5 (N.D.N.Y. July 23, 2015) (Suddaby, J.) ("Although an ALJ need not discuss every shred of evidence, failure to discuss evidence that conflicts with an ALJ's finding prevents meaningful review.").  Additionally, in relying on a perceived lack of objectively verifiable limitations, it is not clear that the ALJ properly considered the effect of plaintiff's somatoform disorder on her perceived pain.  *See Lori H. v. Kijakazi*, 20-CV-1303, 2022 WL 675702, at *3 (N.D.N.Y. Mar. 7, 2022) (Stewart, M.J.) (finding error whether the ALJ appeared to require objective evidence when evaluating plaintiff's somatoform disorder); *Cathleen B.*, 2021 WL 4472472, at *9 (noting that "it

seems inconsistent for the ALJ to insist upon abnormal physical findings to support Plaintiff's claim of chronic fatigue" when such fatigue was the result of plaintiff's somatoform disorder that the ALJ found to be a severe impairment).

The only reason provided by the ALJ to support his finding that appears to have any palpable merit is his citation to plaintiff's activities of daily living or reports of activities. I note, however, that although the ALJ cites to evidence that she was skateboarding, he fails to acknowledge that such activity took place in September 2016, and thus predated plaintiff's alleged onset date in November 2016. AT 2115. As to the other specific activities cited by the ALJ – notations that she was working at various times throughout the relevant period and walking sometimes several miles, and citations to her ability to perform activities such as doing chores, going shopping, handling money, socializing, and caring for her personal needs – although these activities are reasonably inconsistent with plaintiff's other reports, I find that plaintiff's reported and documented activities of daily living, standing alone, simply cannot constitute substantial evidence to support the ALJ's adverse assessment of her subjective reports as a whole under the circumstances of this case. Despite the inconsistencies, it is not wholly clear how a more appropriate assessment of plaintiff's somatoform

disorder could impact how such activities should be viewed.  Because the ALJ's failure to analyze that disorder fully and appropriately primarily prevents me from even conducting a meaningful review of whether his decision is supported by substantial evidence, I find that the ALJ's citation to plaintiff's daily activities is simply insufficient to render the error here harmless.

For the foregoing reasons, I find that the ALJ's failure to make clear that he properly and adequately assessed the effects of plaintiff's somatoform disorder when considering the extent to which he could rely on her subjective reports constitutes error that is not harmless because the ALJ's apparent failure to consider that impairment, despite finding it to be severe, also taints the other reasons he provided to support his finding.  I therefore find remand is warranted for further proceedings.

### 2.    Plaintiff's Other Arguments

Because I have found remand warranted related to the ALJ's failure to appropriately and adequately assess the effects of plaintiff's somatoform disorder, I decline to address plaintiff's other arguments, as any findings by the ALJ regarding the effects of plaintiff's somatoform disorder on remand could alter those findings.

### IV.    SUMMARY AND ORDER

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I find that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence.  Accordingly, it is hereby

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 13) be GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 18) be DENIED, the Commissioner's decision be VACATED, and this matter remanded for further proceedings consistent with this decision and order, without a directed finding of disability, pursuant to sentence four of 42 U.S.C. § 405(g); and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:      March 17, 2022
            Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge